UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY ALLEN GIBBS and ) | |
| JENNIFER GIBBS, ) | |
|       Plaintiffs, ) | |
| ) | |
| vs. ) | 1:08-cv-708-WTL-TAB |
| ) | |
| I-FLOW, INC., a Delaware Corporation; ) | |
| DARLENE ROWLAND; ) | |
| APP PHARMACEUTICALS, INC.; ) | |
| APP PHARMACEUTICALS, LLC; and ) | |
| ABRAXIS BIOSCIENCE, INC., ) | |
|       Defendants. ) | |

**ORDER**

This cause is before the Court on Plaintiffs' Motion to Remand (Docket No. 22). Plaintiffs contend that remand is required because there is a lack of complete diversity among the parties. Specifically, they note that Defendant Darlene Rowland ("Rowland"), like the Plaintiffs, is an Indiana resident. In response, Defendants argue that Rowland was fraudulently joined in order to defeat this Court's diversity jurisdiction and that the removal of this cause was proper.

The instant motion has been fully briefed and is ripe for ruling. For the reasons stated herein, Plaintiffs' motion is **GRANTED**.

**I. BACKGROUND**

Defendant I-Flow, Inc. ("I-Flow") manufactures anesthetic infusion devices, better known as pain pumps. One of their pain pumps was inserted post-operatively into Timothy Allen Gibbs' shoulder. Plaintiffs contend that Mr. Gibbs received dangerous doses of continuously injected anesthetics and that, as a result, he suffered glenohumeral chondrolysis, a complete or nearly

complete loss of cartilage in the shoulder joint.  Plaintiffs contend that Defendants knew or should have known that the pain pump and medication were unreasonably dangerous and defective when used as directed and that Defendants should have warned Plaintiffs or Mr. Gibbs' physician about using the pain pump in the shoulder joint.

Plaintiffs originally commenced this action against I-Flow by filing a complaint in this Court on March 3, 2008.  During the course of investigation, Plaintiffs' counsel uncovered facts that allegedly implicate Rowland, one of I-Flow's sales representatives.  Rowland apparently sold the pain pump in question to Mr. Gibbs' physician.  Plaintiffs believe that Rowland observed and approved of the use of a pain pump inserted directly into the shoulder joint and that she instructed Mr. Gibbs' physician's office on the procedure and medications for filling the pain pump.  Plaintiffs contend that Rowland knew that the pain pump and medication used for Mr. Gibbs should not have been used in the manner that they were.

Based on the information regarding Rowland, Plaintiffs voluntarily dismissed their lawsuit and filed a new Complaint on April 22, 2008, in Hendricks County.  At that time, Plaintiffs named Rowland as an additional defendant along with the manufacturers of the medication used in Mr. Gibbs' pain pump.  As it pertains to Rowland, the Complaint raises the following claims: (1) negligent failure to warn Plaintiffs of the dangers of the pain pump and medication as required by Indiana product liability law, (2) fraud, and (3) loss of consortium.  A copy of the Complaint was served on I-Flow and Rowland on April 28, 2008.  On May 28, 2008, I-Flow and Rowland removed this cause to this Court contending that Rowland was fraudulently joined and invoking the Court's diversity jurisdiction.  The remaining Defendants consented to the removal.

## II. **LEGAL STANDARDS**

A defendant in a civil action filed in state court may remove the action to federal court if the federal court would have had original subject matter jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Defendants argue that removal was proper in this case based on diversity jurisdiction under 28 U.S.C. §1332(a). For removal to be valid based on diversity jurisdiction, 28 U.S.C. § 1332(a) requires complete diversity of citizenship. *See Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1314-1315 (7th Cir. 1994).

Although a plaintiff is free to choose his or her own forum, in-state defendants may not be joined solely for the purpose of defeating federal diversity jurisdiction. *See Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407,410 (7th Cir.2000); *Gottlieb v. Westin Hotel*, 990 F.2d 323, 327 (7th Cir. 1993). Joinder of non-diverse parties solely for this purpose is considered fraudulent and should be disregarded when determining the propriety of removal. *See Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir.1999); *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir.1992) (explaining that "[a]lthough false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives.").

A defendant seeking removal on the basis of fraudulent joinder has a heavy burden of establishing such an allegation. *See Poulos*, 959 F.2d at 73. "The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* (emphasis in original). Essentially, the reviewing court must find that there is no reasonable possibility that a state court would rule against the non-diverse defendant. *Id.*; *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997) (stating that "[i]f

3

there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.") (citation omitted). The scope of this Court's inquiry in determining fraudulent joinder is "extremely narrow," permitting only a summary inquiry to determine whether the plaintiff is precluded from recovering against the in-state defendant. *See Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006); *Valentine v. Ford Motor Co.,* No. 2:03-cv-90-JDT-WGH, 2003 WL 23220758, at *4 (S.D. Ind. Nov. 21, 2003) (noting that the test for fraudulent joinder "is a less searching test than the test under Rule 12(b)(6) [of the Federal Rules of Civil Procedure]").

## III. DISCUSSION

As noted, Plaintiffs bring a products liability claim, a fraud claim, and a loss of consortium claim. In order for the instant motion to succeed, there must be a reasonable possibility that Plaintiffs can succeed on at least one of these claims. *See Poulos*, 959 F.2d at 73. However, because the loss of consortium claim is a derivative claim that can only be maintained if one of the other claims survives, the Court's focus is really on the products liability claim and the fraud claim. *See*, *e.g.*, *Durham ex rel. Estate of Wade v. U-Haul Intern.*, 745 N.E.2d 755, 764 (Ind. 2001) (noting that if a spouse's cause of action for personal injury fails, a derivative claim for loss of consortium also fails); *Bd. of Comm'rs of Cass County v. Nevitt*, 448 N.E.2d 333, 341 (Ind. Ct. App. 1983) (noting that derivative claim of loss of consortium is barred where an injured spouse's claims is completely invalid). Therefore, the Court addresses each of those claims and Defendants' arguments in turn.

## A. PRODUCTS LIABILITY CLAIM

Defendants first argue that Plaintiffs' product liability claim cannot be maintained because Rowland is neither a manufacturer nor a seller as those terms are defined by Indiana's product liability laws. There appear to be no Indiana state cases that have directly addressed the question of whether a sales representative can qualify as either a manufacturer or seller under Indiana's product liability laws.

Even in the absence of any Indiana cases on point, the Court concludes that Plaintiffs can manage to make a reasonable argument in support of their product liability claim by applying Indiana's rules for statutory construction. *See generally* Ind. Code § 1-1-4-1. Indiana courts construing a statute "strive to determine and effect the legislature's intent." *Golladay v. State*, 875 N.E.2d 383, 393 (Ind. Ct. App. 2007). The best evidence of that intent is often the language of a statute itself. *See Mayes v. Second Injury Fund*, 888 N.E.2d 773, 776 (Ind. 2008). Moreover, when words are not specifically defined by the legislature, such words are generally given their plain, ordinary, and usual meaning. *See* Ind. Code § 1-1-4-1(1); *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion County*, 889 N.E.2d 305, 309 (Ind. 2008). In determining the plain and ordinary meaning of an undefined word, a court may utilize English language dictionaries as well as consider a word's relationship wiht other words and phrases. *See 600 Land, Inc.*, 889 N.E.2d at 309.

Turning to the products liability statute, the Court notes that the Indiana General Assembly defined the term "manufacturer" to include a seller who "has actual knowledge of a defect in a product." Ind. Code § 34-6-2-77(a)(1). Thereafter, the General Assembly defined "seller" as "a person who engaged in the business of selling or leasing a product for resale, use, or consumption."

Ind. Code § 34-6-2-136.[1] The term "engaged" is not defined, but commonly used definitions for this term include the words "employed," "occupied," and "involved in activity." *See, e.g.*, WEBSTER'S NEW WORLD DICTIONARY 450 (Third College Ed. 1988); MERRIAM-WEBSTER'S ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/engaged (last visited February 10, 2009); THE COMPACT OXFORD ENGLISH DICTIONARY, http://www.askoxford.com/concise_oed/engaged?view=uk (last visited February 10, 2009); THEFREEDICTIONARY.COM, http://www.thefreedictionary.com/engaged (last visited February 10, 2009). Accordingly, applying the plain meaning of "engaged" to the definition for "seller," it appears that Rowland could qualify as a seller under the statute because, as a sales representative, she was employed to promote and sell the pain pumps to doctors and medical offices. Moreover, Rowland could satisfy the definition of "manufacturer" based on Plaintiffs' allegation that she was aware of the problems associated with the pain pump.

The Court's conclusion on the interpretation of the statute is enhanced by a recent decision from the Northern District of Indiana. In *McDaniel v. Synthes, Inc.*, No. 2:07-cv-245 RM, 2007 WL 3232186 (N.D. Ind. Oct. 29, 2007), the plaintiffs claimed that the defendants, including the sales representative, were liable for injuries sustained from an allegedly defective orthopaedic implant. Noting the definitions for "manufacturer" contained in Indiana Code § 34-6-2-77, the Northern District of Indiana concluded that the plaintiffs had a reasonable possibility of success on its strict liability claim against the sales representative based on their allegations that the representative knew

---

[1] The Court notes that the term "seller" had previously not been defined so broadly and included a simple list of those included, as follows: manufacturers, wholesalers, retail dealers, and distributors. *See* Ind. Code 33-1-1.5-2 (Repealed by 1998 Ind. Acts, Pub. L. No. 1, § 221 at 534.

6

or should have known that the implant was defective. *Id.* at *3. The *McDaniel* court also noted that the case before it differed from other cases of fraudulent joinder because there were factual allegations specific to the sales representative's actions.[2]

The Court finds the reasoning of *McDaniel* to be persuasive and adopts it herein. Not only does the case support the Court's conclusion that Plaintiffs have a reasonable possibility of prevailing on their product liability claim at trial, at the very least, it and the cases from other districts cited by the parties also demonstrate that the issue requires an intricate analysis of state law in order to determine whether dismissal of Plaintiffs' claims is appropriate. As this Court has noted, this circumstance is reason enough for remanding the case to the state court to address the issue. *See Strange v. Crum Constr. LLC*, No. IP 01-789-C-H/G, 2001 WL 1160952, *1-2 (S.D. Ind. Aug. 28, 2001) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)).[3]

### B. LEARNED INTERMEDIARY DOCTRINE

Defendants next contend that even if Rowland could be considered a "manufacturer" or "seller" under Indiana's products liability laws, Plaintiffs' products liability claim against Rowland

---

[2] Defendants go to great lengths to distinguish *McDaniel* on the basis that the representative in that case was actually present during the surgery and had possession of the medical device. However, the Court disagrees that this distinction is of any moment because the *McDaniel* court's analysis on the products liability claim was tied to the statutory definition that someone with knowledge of a defect can be a "manufacturer." If anything, the fact that the representative was present during the surgery in *McDaniel* simply provided more of a basis for ruling in the plaintiffs' favor because it lent additional credence to the plaintiffs' claims.

[3] The Court also notes with some interest that Defendants rely on a number of Mississippi decisions. It appears from the comments to the Restatement(Second) of Torts that Mississippi might be in the minority of states on its treatment of retail dealers, which could make those cases less persuasive when it comes to interpreting Indiana's statute. *See* Restatement (Second) of Torts § 402A cmt. f.

or should have known that the implant was defective. *Id.* at *3. The *McDaniel* court also noted that the case before it differed from other cases of fraudulent joinder because there were factual allegations specific to the sales representative's actions.[2]

The Court finds the reasoning of *McDaniel* to be persuasive and adopts it herein. Not only does the case support the Court's conclusion that Plaintiffs have a reasonable possibility of prevailing on their product liability claim at trial, at the very least, it and the cases from other districts cited by the parties also demonstrate that the issue requires an intricate analysis of state law in order to determine whether dismissal of Plaintiffs' claims is appropriate. As this Court has noted, this circumstance is reason enough for remanding the case to the state court to address the issue. *See Strange v. Crum Constr. LLC*, No. IP 01-789-C-H/G, 2001 WL 1160952, *1-2 (S.D. Ind. Aug. 28, 2001) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)).[3]

### B.  LEARNED INTERMEDIARY DOCTRINE

Defendants next contend that even if Rowland could be considered a "manufacturer" or "seller" under Indiana's products liability laws, Plaintiffs' products liability claim against Rowland

---

[2] Defendants go to great lengths to distinguish *McDaniel* on the basis that the representative in that case was actually present during the surgery and had possession of the medical device. However, the Court disagrees that this distinction is of any moment because the *McDaniel* court's analysis on the products liability claim was tied to the statutory definition that someone with knowledge of a defect can be a "manufacturer." If anything, the fact that the representative was present during the surgery in *McDaniel* simply provided more of a basis for ruling in the plaintiffs' favor because it lent additional credence to the plaintiffs' claims.

[3] The Court also notes with some interest that Defendants rely on a number of Mississippi decisions. It appears from the comments to the Restatement(Second) of Torts that Mississippi might be in the minority of states on its treatment of retail dealers, which could make those cases less persuasive when it comes to interpreting Indiana's statute. *See* Restatement (Second) of Torts § 402A cmt. f.

for negligent failure to warn is precluded by the learned intermediary doctrine. To summarize, they believe that Rowland had no duty to warn Plaintiffs because Mr. Gibbs' physician was an intermediary who should have recognized any danger and warned Mr. Gibbs accordingly. Therefore, according to Defendants, removal was proper.

The learned intermediary doctrine provides that there is no duty to warn when a product is sold to a "knowledgeable or sophisticated intermediary" whom the manufacturer has warned. *See Taylor v. Monsanto Co.*, 150 F.3d 806, 808 (7th Cir. 1998). "In order for the exception to apply, however, the intermediary must have knowledge or sophistication equal to that of the manufacturer, and the manufacturer must be able to rely reasonably on the intermediary to warn the ultimate consumer." *Id.* In addition, the Court notes that in order for a warning to be adequate, it must be reasonable under the circumstances, which is determined by application of negligence theory. *Ortho Pharm. Corp. v. Chapman*, 180 Ind. App. 33, 50, 388 N.E.2d 541, 553 (1979).

Here, application of the doctrine is fact-sensitive, and there are too many uncertainties to be able to reasonably conclude that Rowland will prevail on such a defense. Plaintiffs contend that Rowland knew about the risks associated with using the pain pump to inject medication directly into the shoulder joint but, for whatever reason, failed to inform Mr. Gibbs' physician. Indeed, Plaintiffs allege that Rowland actually approved of the use of the pain pump and medication in this manner and even instructed the physician's office on the procedures for doing so. Although Defendants submit Rowland's affidavit in support of their arguments, the affidavit does not directly refute the Plaintiffs' allegations that she knew of the dangers associated with the pump and medication but failed to warn Mr. Gibbs' physician.

Based on the information currently before the Court, the Court cannot conclude that Mr. Gibbs' physician had knowledge or sophistication equal to that of the manufacturer. This is particular true if, as Plaintiffs' Complaint suggests, Defendants misrepresented the facts regarding the risks, made assurances that their products were safe for insertion into the shoulder joint, and even concealed or failed to disclose safety concerns to the Food and Drug Administration. Therefore, the Court cannot definitively conclude that the learned intermediary doctrine precludes Plaintiffs' product liability claim against Rowland.[4]

### C. ATTORNEY FEES AND COSTS

Plaintiffs have requested attorney fees and costs for incurred as a result of their motion. Such an award is proper where the removing party lacked and "objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).

Here, the Court sees no persuasive reasons weighing against an award of fees and costs. As this Court has noted, removals based on a theory of fraudulent joinder are high risk tactics. *See Strange,* 2001 WL 1160952 at *4. Although Defendants argue that fees and costs should not be awarded because they had an objectively reasonable basis in law and fact to remove the case, the Court must disagree.

Even though the state law on the issue of whether Rowland can be considered a "manufacturer" or "seller" under Indiana's product liability law has not been definitively addressed, a plain reading of the language of the statute and available cases suggest that there is a possibility

---

[4] Given the Court's decision on the products liability claim, the Court has no reason to address the fraud claim and leaves the consideration of Defendants' arguments on that claim for the state court.

9

that she could be. In particular, if nothing else, the *McDaniel* case should have underscored the risk that Defendants were taking when they removed the instant action. Moreover, even when the learned intermediary doctrine is considered, it is obvious that there are certain factual issues with Defendants' affirmative defense that must be resolved before Rowland could prevail on the products liability claim. Thus, when the proper standard for the issue of fraudulent joinder is applied, the issue of whether removal was proper is not difficult. In short, Defendants' efforts provided them with a delay in these proceedings, one to which they were not entitled, and they should not be further rewarded for gambling on the attempted removal by having to avoid the costs incurred by Plaintiffs to seek remand.

The Court notes that Plaintiffs have not submitted any materials concerning the fees and costs incurred as a result of bringing their motion, and they have not submitted any statement pursuant to Local Rule 7.1(e). Therefore, this cause is being remanded immediately by this Order, but the Court shall retain jurisdiction sufficient to deal with the award of fees and costs. *See Wisconsin v. Hotline Industries, Inc.,* 236 F.3d 363, 367 (7th Cir. 2000) (collecting cases; district court may retain jurisdiction over such collateral matters after remand); *Citizens for a Better Environment v. Steel Co.,* 230 F.3d 923, 927 (7th Cir. 2000) (despite dismissal of underlying action, district court retained jurisdiction to award fees and costs). A briefing schedule for submitting the required paperwork on fees and costs is provided at the end of this Order. The Court contemplates deciding the issue on the parties' briefs, but either side may request an evidentiary hearing on the matter if it files a separate written request to that effect. In addition, Plaintiffs may include in their fee request the time they devote to the fee request itself. If the parties are able to agree on an appropriate amount before additional time and expense are devoted to briefing the issue of fees and

costs, they shall immediately notify the Court of their agreement so that an Order to that effect may be entered.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand (Docket No. 22) is **GRANTED** and this cause is **REMANDED** to Hendricks Superior Court 1.

This Court retains jurisdiction sufficient to deal with a fee and cost award.  Plaintiffs shall submit their application for fees and costs incurred as a result of the removal, along with their statement pursuant to Local Rule 7.1(e), **no later than eleven (11) days from the date of this Order**.  Defendants may file a response **no later than fourteen (14) days later**, and Plaintiffs may file a reply **no later than seven (7) days after the response is filed**.

IT IS SO ORDERED: 02/24/2009

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution attached.

11

**Electronically distributed to:**

Erin M. Bosman
MORRISON & FOERSTER LLP
ebosman@mofo.com

Geoffrey M. Coan
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
geoffrey.coan@wilsonelser.com

Dina M. Cox
LEWIS & WAGNER LLP
dcox@lewiswagner.com

Elizabeth J. Doepken
COHEN & MALAD LLP
edoepken@cohenandmalad.com

Jeff S. Gibson
COHEN & MALAD LLP
jgibson@cohenandmalad.com

James Webb Huston
MORRISON & FOERSTER LLP
jhuston@mofo.com

Maynard Kirpalani
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
maynard.kirpalani@wilsonelser.com

Briana Lynn Kovac
BINGHAM MCHALE LLP
bkovac@binghammchale.com

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com

Jae Hong Lee
MORRISON & FOERSTER LLP
jaehonglee@mofo.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Lee B. McTurnan
BINGHAM MCHALE LLP
lmcturnan@binghammchale.com

Kameelah Shaheed-Diallo
LEWIS & WAGNER LLP
kshaheed-diallo@lewiswagner.com